**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **RICHARD FEARS,** ) | **CASE NO. 1:09cv698** |
| ) | |
| Petitioner, ) | **JUDGE JOHN R. ADAMS** |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHELE MILLER, WARDEN,** ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |

      Petitioner, Richard Fears ("Fears"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Fears*, Cuyahoga County Court of Common Pleas Case No. CR-485288.  Fears filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on March 27, 2009.  On July 23, 2009, Warden Michele Miller ("Respondent") filed her Answer/Return of Writ.  (Doc. No. 6.)  Fears filed a reply on August 4, 2009.  (Doc. No. 7.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Fears' Petition be denied.

## I.  Facts

      In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Fears' conviction as follows:

> {¶ 4} The facts that lead to this appeal began in August 2006, when appellant was arrested for sexual assault of a minor, M.H. (DOB 3/7/1993) ("the victim"). Appellant was the boyfriend of the victim's mother and the father of two of the victim's siblings. According to the victim, over a 17-month period, appellant touched her breasts and buttocks, inserted his finger into her vagina, and vaginally

penetrated her with his penis numerous times.

{¶ 5} On August 8, 2006, appellant locked the victim in her bedroom with him, unzipped her pants, and vaginally penetrated her with his penis. Because she could not find her daughter or appellant in the house, the victim's mother knocked on the victim's bedroom door and found it locked. The mother yelled for her daughter to come out of the room. Appellant came out of the room, and the mother saw the victim buttoning her pants. The victim told her mother about appellant's actions over the previous 17 months, and they called the police.

{¶ 6} The victim testified that she could not remember exactly how many times appellant assaulted her because it happened so frequently. She remembered that he attacked her in the basement, her mother's room, the dining room, the living room, and the "little room." The victim recalled at least ten times when she was assaulted while living on Meadowbrook Drive and that appellant continued the attacks after her family moved to Mt. Herman Avenue.

{¶ 7} Appellant testified on direct examination that he had two other children by two other women while dating the victim's mother. Appellant also testified that he worked several jobs to support his children and helped out with his girlfriends' other children. The state tried to rebut this testimony by showing that appellant was not involved in the lives of his children.

*State v. Fears*, 2008 WL 2257751, 2008-Ohio-2661 at ¶¶ 4-7 (Ohio App. 8th Dist. 2008); (Resp. Exh. 10.)

## II. Procedural History

### A. Conviction

On August 22, 2006, a Cuyahoga County Grand Jury indicted Fears for 31 counts of rape, 31 counts of kidnapping and 12 counts of gross sexual imposition. (Resp. Exh. 1.) In addition, all counts carried a sexual predator specification. *Id*.

The case proceeded to a jury trial whereat Fears was found guilty of one gross sexual imposition charge (count 25), a felony of the third degree. (Resp. Exh. 3.) On June 1, 2007, Fears was sentenced to a five-year prison term with five years post-release control. (Resp. Exh. 4.) The trial court also found him to be a sexual predator. (Resp. Exh. 5.)

### B. Direct Appeal

Represented by new counsel, Fears filed a timely Notice of Appeal to the Eighth District Court of Appeals, Cuyahoga County, Ohio, raising two assignments of error:

    1.    The trial court abused its discretion by (i) permitting the State to extensively cross-examine appellant about numerous irrelevant and prejudicial subjects unrelated to the sex abuse charges, and (ii) by failing to *sua sponte* end such questioning, admonish the

>   prosecutor or give the jury a curative instruction, all of which violated Ohio Evidence Rules 402, 403 and 404, and deprived him of his rights to a fair trial and substantive due process guaranteed by Article I, Section 10 of the Ohio Constitution and the Fifth and Fourteenth Amendment [sic] to the United States Constitution.
>
> 2. The trial court erred in sentencing appellant to a five-year maximum prison term because the sentence was unconstitutionally harsh given appellant's clean criminal record and the minimal evidence of harm to the alleged victim.

(Resp. Exhs. 6, 7.) On June 2, 2008, the state appellate court affirmed Fears' conviction and sentence. (Resp. Exh. 10.) No appeal from this decision was taken.

### C. Application to Reopen

On September 30, 2008, Fears, *pro se*, filed a delayed application to reopen in the state appellate court arguing that appellate counsel was ineffective in failing to raise the following assignments of error on direct appeal:

> 1. Indictment was fatally defective, whereby it failed to charge a criminal violation of GSI and, therefore, convict on every element of offense(s).
>
> 2. Counts alleging GSI were unconstitutionally vague, in that no exact dates, terms of day or place/location acts were committed were specified, thereby questioning whether a unanimous verdict was reached on a specific count.
>
> 3. The trial court abused its power in matters of punishment, as it inflicted a "trial tax" for exercising constitutional freedom.
>
> 4. Labeling as a "sexual predator" was unsupported by criminal history and conviction for one count of GSI.

(Resp. Exh. 11.) As cause for the delay beyond the ninety days allowed to seek reopening under Ohio App. R. 26(B), Fears asserted that appellate counsel did not inform him of the court's June 2, 2008, decision until two months after it issued. *Id*. On October 14, 2008, the state appellate court dismissed the application as untimely. (Resp. Exh. 12.) The court rejected Fears' explanation for his delay, stating: ". . . this court has consistently found that the failure of appellate counsel to communicate with his client does not constitute good cause." (Resp. Exh. 12 at Tr. 34.)

On November 6, 2008, Fears, *pro se*, filed a timely notice of appeal to the Ohio Supreme Court raising the following propositions of law:

3

    I.      An appellant receives ineffective assistance of counsel where said fails to: (1) apprise appellant of result of appeal until (70) days after journalization; (2) give adequate notice of an alleged suspension, so that substitute counsel may be obtained; AND (3) raise substantial issues ascertained and which should have jumped right out from record.

    II.      Where indictment alleges twelve (12) counts of gross sexual imposition, and no exact dates, terms of day or location of acts are specified, it is so unconstitutionally vague as to place into question whether an unanimous verdict was reached on count convicted for.

    III.      A trial court abuses its powers, in matters of punishment, where it inflicts a "trial tax" for exercising constitutional freedom.

    IV.      Labeling as a "sexual predator" for one count of GSI and no other sexually-oriented history vitiates due process and equal protection of the law.

(Resp. Exhs. 13, 14.) On January 28, 2009, the Ohio Supreme Court dismissed Fears' appeal as not involving any substantial constitutional question. (Resp. Exh. 15.)

### D. Federal Habeas Petition

Fears' habeas petition raises four grounds for relief:

    **Ground One**: Ineffective assistance of appellate counsel.

    **Ground Two**: Indictment was unconstitutionally vague.

    **Ground Three**: Trial court abused its awesome power by inflicting a "trial tax."

    **Ground Four**: Sexual offender classification vitiates due process and equal protection of the law.

(Doc. No. 1.)

### III. Exhaustion and Procedural Default

### A. Exhaustion

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B. Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

5

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp. 2d 708 (N.D. Ohio 2002).

Finally, a petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982). Ineffective assistance of appellate counsel

6

may constitute cause for a procedural default, *Murray*, 477 U.S. at 488, unless that claim is also procedurally defaulted. *Edwards v. Carpenter*, 429 U.S. 446, 452 (2000).

In the absence of cause and prejudice, a petitioner may demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray*, 477 U.S. at 496.

### C. Application to Fears

Fears contends that he did not appeal to the Ohio Supreme Court on his direct appeal nor timely file an application to reopen pursuant to Ohio App. R. 26(B) because his appellate counsel failed to inform him of the state appellate court's adverse ruling in a timely manner. Respondent argues that Fears procedurally defaulted all grounds as they either were not presented to the state court on direct review, or were not fairly presented in a full round to the state courts. Furthermore, Respondent claims that these grounds are barred from habeas review as the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris v. Reed*, 489 U.S. 255, 260-262 (1989).

On August 14, 2008, Fears first learned from counsel about the state appellate court's adverse decision journalized on June 2, 2008. (Doc. No. 6-5, Exh. 11 at Tr. 15, 22.) In a letter dated August 7, 2008, counsel informed Fears that it was beyond the time period to file a direct appeal to the Ohio Supreme Court, but a delayed appeal could be filed. (Doc. No. 6-5, Exh. 11 at Tr. 22.) Counsel also told Fears that due to his temporary suspension from the bar, he was unable to assist, but did provide the name of an attorney willing to help. *Id*. However, Fears did not request the Ohio Supreme Court to allow a delayed appeal. Instead, acting *pro se*, he filed a 26(B) application to reopen in the state appellate court raising different assignments of error than had been raised on direct appeal, asserting that his appellate counsel was ineffective for failing to raise them earlier. (Doc. No. 6-5, Exh. 11 at Tr. 15.) After the state appellate court dismissed the application as untimely, Fears filed a notice of appeal to the Ohio Supreme Court. In this filing, Fears set out a specific assignment of error relating to the ineffective assistance of his

appellate counsel, as well as the other claims he raised in his 26(B) motion. Nonetheless, the Court dismissed this appeal as not involving any substantial constitutional question.

Fears did not comply with the timeliness requirements in Ohio App. R. 26(B). The Sixth Circuit has concluded that the time constraints in an application to reopen are an actually enforced, adequate and independent state ground upon which the Ohio courts consistently refuse to address ineffective assistance of appellate counsel claims.[1] *See, e.g., Parker v. Bagley,* 543 F.3d 859, 862 (6th Cir. 2008) (non-capital case); *Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir. 2008)(capital case); *see also Coleman v. Mitchell*, 244 F.3d 533, 539-40 (6th Cir. 2001) (finding that the petitioner procedurally defaulted his claim because he failed to comply with the requirements in Ohio App. R. 26(B)); *Wickline v. Mitchell*, 319 F.3d 813, 823 (6th Cir. 2003) (finding that the petitioner's ineffective assistance of appellate counsel claims were procedurally defaulted because he failed to comply with the rule set forth in *Murnahan*). Therefore, as Fears' ineffective assistance of appellate counsel claim was not raised in a timely manner, it is itself defaulted and cannot be used to excuse the default on his underlying claims. However, giving Fears the benefit of the doubt, the Court will address the issue of appellate counsel's failure to inform him of the June 2, 2008, adverse decision in a timely manner.

Ordinary attorney error does not constitute cause. *Murray*, 477 U.S. at 488; *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); *see, e.g., Williams v. Hurley*, No. 2:05-cv985, 2006 WL 1804550, at *1-2 (S.D. Ohio June 28, 2006). Rather, the error must amount to constitutionally ineffective assistance of counsel under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984);[2] *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991);

---

[1] The state appellate court dismissed the application to reopen relying on well-established case law that "inability to access the record," reliance on counsel, as well as the failure of appellate counsel "to communicate with him and provide him with necessary records" do not provide a basis for finding that an applicant has good cause for the untimely filing of an application for reopening. *State v. Morgan*, 2007 WL 3028197, Case No. 55341 (Ohio App. 8th Dist. Oct. 16, 2007).

[2] The two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. Thus, Fears must demonstrate that his appellate counsel's

*Howard*, 405 F.3d at 478; *Manning v. Hoffman*, 269 F.3d 720, 723-24 (6th Cir. 2001) (ineffective assistance of appellate counsel can be cause).

While there is no constitutional right to counsel in a direct appeal to the Ohio Supreme Court, *see Evitts v. Lucey,* 469 U.S. 387, 394 (1985); *Ross v. Moffitt,* 417 U.S. 600, 609-10 (1974), or on collateral review, including a 26(B) application to reopen, *see Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005), the Sixth Circuit has recognized that an appellate attorney is constitutionally ineffective when that attorney does not notify his client of the results of the appeal of right in a prompt manner so as to permit a timely discretionary appeal to be filed. *Smith v. State of Ohio Rehab. and Corrections*, 463 F.3d 426, 433 (6th Cir. 2006), *reh'g. and reh'g en banc,* (2007). Such ineffectiveness is cause for a procedural default in not filing a timely appeal with the Ohio Supreme Court. *Id.; see, e.g., Edwards*, 529 U.S. at 451; *Murray*, 477 U.S. at 488-89.

Appellate counsel's duties do not terminate the moment the court of appeals hands down its decision. "Because a defendant is entitled to effective assistance of counsel on direct appeal, such an individual must be accorded effective assistance of counsel throughout *all* phases of that stage of the criminal proceedings." *Smith* at 433. A litigant must have, at a minimum, timely notice that his appeal was decided and that the clock for a discretionary appeal has started running. "Providing that information is the responsibility of the appellate attorney. Anything short of requiring the appellate attorney to discharge his [ ] responsibilities creates a legal 'Bermuda triangle' where even potentially valid claims disappear without ever being heard."

---

performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *Strickland*, 466 U.S. 668, 687 (1984). An appellant has no constitutional right to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003)(internal quotation marks and citations omitted).

*Nix v. Warden, Warren Correctional Institution*, 2007 WL 2326866 (S.D. Ohio 2007) (*citing Foster v. Money*, 2006 WL 3342725, (N.D. Ohio 2007)).

When a petitioner alleges that his counsel's ineffective assistance led "to the forfeiture of a proceeding itself" by denying him the opportunity to appeal, prejudice is presumed. *Roe v. Flores-Ortega*, 528 U.S. 482, 483 (2000) (involved direct appeal to state appellate court). For this presumption to apply, however, petitioner must demonstrate that counsel's deficient performance "actually cause[d] the forfeiture of the [petitioner's] appeal." *Id*. at 484. In *Roe v. Flores-Ortega*, the Supreme Court held that a petitioner claiming that counsel's failure to consult with him regarding filing an appeal was entitled to the presumption of prejudice if he could "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. In *Smith*, the Sixth Circuit applied a modified version of this standard in a case in which the petitioner alleged that his appellate counsel failed to inform him of an adverse decision, and thereby denied him the opportunity to file a timely appeal in the Ohio Supreme Court. *See Smith* at 435. The *Smith* Court noted that prejudice will be presumed when counsel is deficient in reporting the results where "'there is a reasonable probability that, but for counsel's deficient failure to' notify [petitioner] of the Ohio Court of Appeals decision, [petitioner] would have 'timely appealed' to the Ohio Supreme Court." *Id*. at 435 (*quoting Roe v. Flores-Ortega* at 485.) The *Smith* Court, however, went on to determine that counsel's deficient performance did not prejudice the petitioner since he made no attempt to appeal for approximately five months after he received the notification of the results of his appeal as of right. *Id.* at 436.

In assessing whether a defendant such as Fears "would have timely appealed," the *Smith* Court applied a presumption that if the period of time between when the defendant learned of the decision and when he attempted to appeal is greater than the period allotted by state law for the timely filing of an appeal, the defendant failed to demonstrate that he "would have timely appealed" the decision but for the counsel's failure to notify. *See Smith* at 435. "[A]llowing a greater amount of time would generally bestow a windfall upon the defendant whose counsel promptly failed to notify the defendant of a decision." *Id*.

10

Fears indicates he received the appellate court decision from counsel on August 14, 2008. (Doc. No. 6-5, Exh. 11 at Tr. 15.) Instead of filing a delayed appeal with the Ohio Supreme Court, Fears filed a 26(B) application to reopen, which was due 90 days after the journalization date of the decision, or September 2, 2008.[3] Fears filed his 26(B) application on September 30, 2008, which was within 47 days of the date he first received the adverse decision. This would tend to establish that under the *Smith* standard Fears acted promptly in attempting to reopen his appeal. Therefore, rather than further analyzing whether Fears' appellate counsel's conduct would excuse the procedural default, this Court will proceed to address the merits of Fears' grounds for relief. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

### IV. Review on the Merits

**A. Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]The computation of 90 days from June 2, 2008, actually fell on Sunday, August 31, 2008. The next day, the first Monday in September was a federal holiday. Therefore, the application to reopen was due on Tuesday, September 2, 2008.

11

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

If a state court does not articulate the reasoning behind its decision or fails to address the constitutional issues, the federal court must look at the state court's decision and conduct an independent inquiry into whether the state court reached a decision contrary to clearly established federal law or based its decision on an unreasonable determination of the facts in light of the evidence presented. *Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002); *Harris v. Stovall*, 212 F.3d 940, 943 & n.1 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). The review is not a full *de novo* review of the claims, but is deferential to the state court's

12

determination. *Id.* "However, because the state courts never addressed the merits of petitioner's claim, this Court conducts a de novo review." *Mickens v. Moore*, 2008 WL 1696962 (S.D. Ohio Apr. 9, 2008), *citing Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005), *citing Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

### B. Ground Two - Vague Indictment

Fears argues that the 74 count indictment charging him with rape, kidnapping and gross sexual imposition was unconstitutionally vague as the counts were not "separated by a specific date, term [sic] of day or place/location [the] act was alleged to have been committed." (Doc. No. 1, p. 8.) He contends that this inhibited his ability to defend and makes it impossible to conclude that the jury verdict was unanimous as to the conduct found to be the foundation for the lone conviction. (Doc. No. 1, p. 9.)

"[T]he Constitution does not require any particular state indictment rule . . . [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954 (1976)). Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977). The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id.* "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). The United States Supreme Court has held as follows:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements

13

necessary to constitute the offence intended to be punished." "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487 (1888)

*Hamling v. United States*, 418 U.S. 87, 117-118 (1974); *accord United States v. McAuliffe*, 490 F.3d 526, 530 (6th Cir. 2007); *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003).

In *Valentine v. Konteh*, 395 F.3d 626, 636 (6th Cir. 2005), the Court found that multiple convictions for identical charges that were left undifferentiated throughout the state court proceedings violated due process. Nonetheless, the *Valentine* Court sustained the conviction on one count of child rape and one count of felonious sexual penetration, as there was sufficient testimony as to one instance of each. *Id*. at 628. It held that any constitutional error was harmless with respect to single convictions. *Id*. at 637. Moreover, the Court ruled that Valentine could not be subsequently charged with the same crimes against the victim during the same period. *Id*. at 628.

Here, even if the indictment was vague, that deficiency does not disturb the conviction of one count of gross sexual imposition. The state appellate court's decision on the issue of admissible evidence referred to testimony of the victim upon which the jury relied. If this case had been tried on only one count, the conviction would clearly stand. Therefore, any constitutional error with regard to the other 11 counts of gross sexual imposition would not render invalid the conviction for one. *See Valentine* at 637 (*citing Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)) (finding that when federal courts collaterally review convictions, trial errors are harmless unless they "had a substantial and injurious effect or influence in determining the jury's verdict."). Because Fears was not convicted of multiple, undifferentiated counts of the same offense, Ground two must fail.

**C.  Ground Three - Vindictiveness**

Fears also asserts that his sentence was vindictive because he rejected a plea offer and exercised his right to trial.[4]

---

[4]Fears refers to the alleged vindictiveness as a "trial tax."  (Doc. 1. p. 9.)

A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States*, 468 U.S. 559, 568 (1984). However, the mere imposition of a longer sentence than a defendant would have received had he pled guilty does not automatically constitute vindictive or retaliatory punishment. *Williams v. Jones*, 231 F.Supp.2d 586, 599 (E.D. Mich. 2002). "[T]he Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused." *Id.* (*citing Corbitt v. New Jersey*, 439 U.S. 212, 223-24 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978)). Although a defendant is free to accept or reject a plea bargain, once that bargain has been rejected, "the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is presumptive evidence of judicial vindictiveness." *Id*. To demonstrate a constitutional violation, a defendant must "affirmatively prove actual vindictiveness" on the basis of the record. *Wasman*, 468 U.S. at 569.

In the present case, Fears was sentenced after being convicted at a trial following his decision to reject a plea bargain. Fears contends that the sentencing court was vindictive because the judge took into consideration his "lack of remorse" and the harm to the victim. (Doc. No. 1, p. 9.) The state appellate court, in reviewing whether the sentence was too harsh as opposed to vindictive, concluded that the trial judge assessed the appropriate sentencing factors under the Ohio Revised Code and properly sentenced Fears within the authorized range of prison terms. *See, e.g., Williams*, 231 F.Supp.2d at 598; *see also Polk v. Trombley*, 2007 WL 2746614, *8, Case No. 2:06cv10568 (E.D. Mich, Sept. 19, 2007). Fears cannot meet his burden that the sentence was vindictive by arguing that the trial court improperly took into account matters that Ohio law specifically directs judges to consider, *i.e.*, lack of remorse and harm to the victim. Fears fails to show that his sentence was vindictive.

### D. Ground Four - Classification as Sex Offender

Fears also asserts that his classification as a sexual offender violates due process and the equal protection of the law. Fears argues that the court's finding that he is a sexual predator

15

should have been made by the jury. (Doc. No. 1, p. 10.) Fears also contends that this ground has merit because after he is released from prison, if he fails to register as a sex offender, "the threat of custody looms large." (Doc. 7, p. 2.)

To the extent Fears believes his classification as a sexual predator was improper under Ohio law, such a claim is not cognizable in federal habeas review. A federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

The Sixth Circuit has held that a prisoner challenging the application of Ohio's sexual predator law, even a prisoner who is currently incarcerated, fails to satisfy the "in custody" requirement necessary to obtain habeas relief. *See Leslie v. Randle*, 296 F.3d 518, 520-22 (6th Cir. 2002) (reasoning that Ohio's sexual-predator statute places no constraints on a person's movement or ability to engage in legal activities); *accord Cox v. Brunsman*, 2008 U.S. Dist. LEXIS 78799 (S.D. Ohio Sept. 5, 2008); *see also Thomas v. Morgan*, 109 F. Supp. 2d 763, 767 (N.D. Ohio 2000) ("[T]he classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas corpus.") Therefore, Fears' fourth ground for relief should be denied.

### E. Ground One - Ineffective Assistance of Appellate Counsel

Fears' ineffective assistance of appellate counsel claim is based solely upon the failure to raise Grounds two through four of this Petition through direct appeal. Since the Court has concluded that these grounds are meritless, Fears' claim under Ground one must fail also. Appellate counsel is not required to raise frivolous issues. *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308 (1983) (defendant has no constitutional right to have every non-frivolous issue raised on appeal) Furthermore, tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002, 111 S.Ct. 565 (1990).

Furthermore, Fears has not demonstrated that he was prejudiced by counsel's

ineffectiveness. Prejudice must be "'actual prejudice,' as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Bousley v. U.S.*, 523 U.S. 614, 622 (1998); *Murray v. Carrier*, 477 U.S. 478, 489 (1986). Here, Fears was not prejudiced by counsel's delayed notification as the errors he attempted to raise in his application to reopen are the same as in the instant Petition. Since the Court has considered and rejected each of these grounds on the merits, there is no need to address appellate counsel's ineffectiveness for failing to raise them earlier. There is no prejudice.

## V. Conclusion

For the foregoing reasons, the Magistrate Judge recommends Fears' Petition be denied.

                 s/ Greg White
                 United States Magistrate Judge

Dated: December 1, 2009

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**